UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ANNE M.  PARR                                                    CIVIL ACTION

VERSUS                                                              NO. 09-3576

NICHOLLS STATE UNIVERSITY, ET AL.                SECTION "N" (1)

**ORDER AND REASONS**

Prior to May 2009, Plaintiff, Anne Parr, was an assistant professor at the John Folse Culinary Institute at Nicholls State University ("JFCI").  In this action, Plaintiff has asserted several claims arising out of that employment.  The defendants to this action are Stephen T. Hulbert, President of Nicholls State University, Carroll Falcon, Retired Provost and Academic Vice-president of Nicholls State University, Alton F. Doody, Former Dean of the John Folse Culinary Institute at Nicholls State University, and Randolph Cheramie, Former Acting Dean, Associate Dean, and now Executive Director of the John Folse Culinary Institute (the "Individual Defendants"), as well as the Board of Supervisors for the University of Louisiana System ("Board of Supervisors"), as the entity responsible for the control and management of Nicholls State University.  Plaintiff's claims are asserted under, *inter alia*, the Equal Pay Act, 29 U.S.C. §206(d), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and 42 U.S.C. §1983.

1

## PROCEDURAL BACKGROUND

A trial by jury was held in this matter on February 7-10, 2011, and February 14-16, 2011.  Near the end of trial, Plaintiff withdrew her retaliation claims asserted against Defendant Board of Supervisors under Title VII and Title IX.  She also withdrew her equal protection retaliation claims against all of the individual defendants asserted under §1983.  Thereafter, considering the evidence presented at trial, the Court granted judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure relative to Plaintiff's due process claims asserted under §1983 against defendant Randolph Cheramie.  Finally, at the close of all evidence and argument, following more than 7 hours of deliberation, the jury rendered a verdict as to Plaintiff's due process claims under §1983 in favor of the remaining individual defendants – Hulbert, Falcon, and Doody.  *See* Rec. Doc. 447.

During the week prior to the trial, on Thursday, February 3, 2011, the Court advised counsel of the following:[1]

> We are doing our very best to address your pending summary judgment motions. As you know, however, there are numerous motions and voluminous associated briefs and exhibits for each of those several motions.[2]

---

[1]      February 3, 2011 Email from Jennifer Rogers, Career Law Clerk, to counsel of record, transmitted at the request of Judge Engelhardt.

[2]      The record of this action contains an over 400 filings. Further, many of those submissions are unnecessarily voluminous.  For example, Plaintiff's opposition to Defendants' Equal Pay Act motion for summary judgment purports to consist of twelve separate record filings, totaling more than 1,000 pages of memoranda and exhibits.  *See* Rec. Docs. 218, 385.  Similarly, Plaintiff filed three opposition memoranda responsive to Defendant's "Motion for Partial Summary Judgment Under 42 U.S.C. §1983, Title VII and Title IX."  *See* Rec. Docs. 226, 287-88, and 330. And, as the Court has previously noted, Plaintiff submitted at least six different opposition memoranda in response to a motion in limine.  *See* Rec. Doc. 397.

2

In the interest of facilitating your trial preparation, be advised that the claims listed below are DISMISSED and are not to be urged at trial. In other words, the Defendants' pending motions are being granted, and the Plaintiff's motions denied, relative to these claims. A formal Order and Reasons reflecting these rulings will be issued for the record just as soon as possible. Counsel are cautioned that the present absence of a formal Order and Reasons is NOT to be viewed as justification for further argument [] relative to these claims. The parties are being advised of these rulings in advance of an Order and Reasons being entered into the record solely as a convenience to the parties and to facilitate efficient trial preparation.

The following claims are DISMISSED as the Court finds there to be no genuine issue of material fact, and that Defendants are entitled to judgment as a matter of law, relative to them:

1) Plaintiff's claims under the Equal Pay Act.

2) Plaintiff's claims of discrimination (disparate treatment) based on gender, religion (Catholic) and/or being Cajun asserted under any statute (Title VII, Title IX or Section 1983).

3) Any claims asserted by Plaintiff of hostile work environment based on gender, religion (Catholic) and/or being Cajun (Title VII, Title IX or Section 1983).

With this Order and Reasons, the Court memorializes these rulings for the record in this matter.

Accordingly, as set forth herein, **IT IS ORDERED** that Defendants' motions bearing record document numbers 218 and 226 are **GRANTED** and that Plaintiff's motion bearing record document number 209 is **DENIED**.   **IT IS FURTHER ORDERED** that, to the extent that Defendants'  motions bearing record document numbers 305 and 318 also address the claims discussed herein, those motions are **GRANTED IN PART**.  To the extent that the parties' pending motions bearing record document numbers 305, 318, and 326 address other claims, *i.e.* those determined by the jury at trial or withdrawn by Plaintiff prior to the commencement of trial, and a ruling on the motions remains necessary, **IT IS ORDERED** that the motions are **DENIED**.

## LAW AND ANALYSIS

In this action, Plaintiff complains that, during her employment at JFCI, she was treated less favorably than male employees because of her gender, her Catholic faith, and her Cajun ancestry. She also contends that she was subjected to a hostile work environment resulting from harassment based on her gender, her Catholic faith, and her Cajun ancestry. Defendants deny Plaintiff's contentions and ask that all of her claims be dismissed.

## I.    Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must

"go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553;  *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986);  *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party.  *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted).  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").  Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S.

5

871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence if sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

## II.   <u>Equal Pay Act</u>

Plaintiff contends that the Board of Supervisors violated the Equal Pay Act ("EPA") by paying her less than George Kaslow and Randolph Cheramie were paid. To establish a prima facie case for disparate pay under the EPA, Plaintiff must show that: (1) the defendant is subject to the EPA; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the male employee(s) providing the basis of comparison. *See, e.g., Wiley v. American Elec. Power Serv. Corp.,* 287 Fed. Appx. 335, 341, 2008 WL 2787441, *5 (5th Cir. 2008)(quoting *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)(internal quotations omitted)). Plaintiff need not show that her job duties were identical to those of higher paid male employees; rather, only that the "skill, effort and responsibility" required in the performance of the compared jobs are "substantially equal." *E.E.O.C. v. TXI Operations, L.P.*, 394 F. Supp.2d 868, 874-75 (N.D. Tex. 2005)(citing *Peters v. City of Shreveport*, 818 F.2d 1148, 1153 (5th Cir.1987)); *see also Reznick v. Associated Orthopedics & Sports Medicine*, 104 Fed. Appx. 387, 390, 2004 WL 1559571, *3 (5th Cir. 2004) (citing 29 C.F.R. § 1620.13(e)) (plaintiff

must show that the job requirements and performance of the two positions, though not necessarily identical, were substantially equal).

If a prima facie case is made under the EPA, a defendant may assert, as an affirmative defense, that the pay disparity "is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Wiley,* 287 Fed. Appx. at 341, 2008 WL 2787441 at *5 (quoting *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983) (quoting 29 U.S.C. § 206(d)(1)(internal quotations omitted)).[3] "Factors other than [gender] include, among other things, employees' different job levels, different skill levels, previous training, and experience." *Browning v.  Southwest Research Inst.*, 288 Fed. Appx. 170, 174, 2008 WL 3009894, *2 (5th Cir. 2008)(quoting *Pouncy v. Prudential Ins. Co.*, 668 F.2d 795, 803 (5th Cir. 1982)), *cert. denied,* 129 S.Ct. 1315 (2009).

In the instant matter, Plaintiff fails to satisfy her summary judgment burden relative to establishing a prima facie case of an EPA violation.  Further, even if Plaintiff can establish the existence of a triable issue relative to a prima facie EPA violation, the same is not true relative to pertinent, gender-neutral factors justifying any pay disparity.

In urging the merits of her EPA claim,  Plaintiff essentially asks the Court to ignore that she, Kaslow, and Cheramie held differing titles and administrative positions at JFCI – that is, Acting Dean (Kaslow and then Cheramie), Assistant Dean (Plaintiff), and Associate Dean

---

[3]       The same defenses apply to claims of unequal pay asserted under Title VII. *Browning,* 288 Fed. Appx. at 174, 2008 WL 3009894, at *2 (quoting *Jones v. Flagship Intern.*, 793 F.2d 714, 723 n. 8 (5th Cir.1986), *cert. denied*, 479 U.S. 1065 (1987)).

(Cheramie) – but does not adequately demonstrate the propriety of doing so.  Although there likely was some overlap and parity of skill, effort, and responsibility amongst the three positions, the positions have not been shown to be substantially equivalent for purposes of the EPA.  Specifically, a Dean or Acting Dean typically has differing leadership authority and responsibilities than the Assistant and/or Associate Deans working under him or her.  And, though there likely are exceptions to this general rule, Plaintiff has not established a triable issue relative to the existence of one here.

Similarly, though in some instances there may be little or no significant distinction between the positions of Assistant Dean and Associate Dean, the summary judgment evidence presented likewise does not show that to be true with respect to Cheramie and Plaintiff.  Rather, testimony from Falcon, Doody, and Cheramie established that Doody was hired as Dean to work at a 80% level and that his employment at JFCI was not expected to be long-term. Thus, Falcon and Doody concluded that having former Acting Dean Cheramie, a long-term instructor, Nicholls graduate, and native of the area, who also got along well with Doody, university administrators, and JFCI staff and students, serve in the newly created position of Associate Dean would complement Doody's efforts, as necessary, and, they hoped, foster needed continuity of leadership at the school.[4]

---

[4]       Although the decision ultimately was Doody's, Falcon recommended that Cheramie, the Acting Dean prior to Doody's arrival, serve as Doody's Associate Dean.  *See* Doody Dep. Tr., Rec. Doc. 245-6, at pp. 57-60; Falcon Dep. Tr., Rec. Doc. 245-5, at pp. 235-42. In discovery responses, Falcon states: "Cheramie was asked to assume [the Associate Dean] position as an indication that he was the second in command to the [D]ean." *See* Response No. 5 of "Defendant's Answer to Discovery Requests," Rec. Doc. 288-3, p. 22 of 80. At Falcon's deposition, he explained that an Associate Dean typically is higher than an Assistant Dean, serves as the Dean's "right hand," and "serves in the [Dean's] capacity whenever he's absent." *See* Falcon Dep. Tr., Rec. Doc. 245-5, at pp. 44-48, 235-38.  At his deposition, Doody testified that Cheramie was very helpful, and had a "whole skillset of experiences different from [him]." *See* Doody Dep. Tr., Rec. Doc. 245-6, at pp. 250-51. He described their relationship as a "very good symbiotic"one.  *Id.*

Further, the parties' submissions reveal that Plaintiff and Cheramie employed certain differing skills, training, and experience in their primary administrative roles.  For instance, Plaintiff, who served as Assistant Dean, had received more extensive formal education, and contributed much to JFCI relative to the school's accreditation status, curricula, recruiting, and university relations.  On the other hand, Associate Dean Cheramie, who brought practical experience and knowledge gained from serving as a Chef/Lecturer at JFCI since 2000, and working in the restaurant industry for nearly 20 years, including 15 years as Executive Chef/Owner of a restaurant, primarily focused his efforts, skills, and talent on running and developing the vocational side of the school, which included the kitchen facility and staff.

Finally, and significantly, whereas the positions of Dean and Associate Dean of JFCI had twelve-month appointment, Plaintiff's position of Assistant Dean had only a ten-month appointments.[5]  The summary judgment evidence establishes that personnel with twelve-month appointments, unlike personnel with ten-month appointments, are required to provide their services to JFCI year-round, and thus are not free to hold alternative employment during the remaining two summer months.  Accordingly, while twelve-month employees like Kaslow and Cheramie continued to be paid during the two summer months, ten-month employees, like Plaintiff, were not compensated by JFCI during those months, unless they held a separate teaching appointment for the summer term, or participated in a supplemental JFCI program such as SUSTA.

---

[5]     Falcon testified that a ten-month term was assigned to the JFCI Assistant Dean position based on an understanding that Assistant Deans at Nicholls typically have ten-month appointments, whereas Associate Deans typically have twelve-month appointments.  *See* Falcon Dep. Tr., Rec. Doc. 245-5, at pp. 45-46 and 252-56.

Although Plaintiff points to some evidence in the summary judgment record that she actually did provide certain administrative services to JFCI during some part of the two summer months, her appointment documents clearly establish that she was hired to work a ten-month term at a set salary.[6]  The record likewise indicates that it was not uncommon for faculty with nine and ten-month appointments to do some uncompensated work during "off" time.[7]  The record does not establish, moreover, that Plaintiff, notwithstanding her ten-month appointment, was *required* to perform administrative tasks during that particular time, and/or that Plaintiff, once familiar with the workings of the Assistant Dean position, requested an adjustment of her salary, position, or appointment, but was denied.[8]  Rather, it appears that Plaintiff improperly seeks to utilize the EPA to effect an after-the-fact negotiation of her contract, and/or to remedy belated objections about her ranking or salary level during her employment at JFCI.  The Court does not find the EPA to serve this function and, thus, rejects Plaintiff's EPA claims.[9]

---

[6]    *See* Rec. Docs. 297-3, pp. 31-33 of 34.

[7]    *See* Kaslow Dep. Tr.,  Rec. Doc. 188-1, at pp.57-59; Cheramie Dep. Tr.,  Rec. Doc. 245-7, at pp. 54-60, 190; Falcon Dep. Tr., Rec. Doc. 245-5, at pp. 246, 252.

[8]    Falcon testified that a ten-month employee should only work ten months of the year and that, if asked to work during the remaining two months, respond that she is not appointed for that period.  *See* Falcon Dep. Tr., Rec. Doc. 245-5, at pp. 242- 246.  Additionally, at his deposition, John Ford, Director of Human Resources at Nicholls,  testified that administrators who work overtime can earn "comp time."  *See* Ford Dep. Tr., Rec.  Doc.  245-4, pp. 100-101.  There is also no indication that Plaintiff sought and was refused  "comp time" for any work done outside her ten-month appointment period.

[9]    As part of her EPA claim, Plaintiff also seeks additional compensation equal to that earned by George Kaslow as an endowed fellowship stipend and as "adjunct overload" pay.  As Plaintiff never held an endowed fellowship, she was not entitled to such a stipend.  As for adjunct overload pay, it is not entirely clear from the record whether Kaslow received that sum for the 2008 academic year or, after Plaintiff's employment ended, for the fall 2009 term.  In any event, Kaslow's

III.   **Title VII**

    A.   **Discrimination (Disparate Treatment)**

During the course of this litigation, the Court has endeavored, multiple times, to have Plaintiff sufficiently identify all of her claims. These efforts have not met with much success. In any event, in analyzing the parties' summary judgment materials, the Court has construed Plaintiff's submissions in her favor, as it must, in terms of seeking to identify and address Plaintiff's asserted discrimination claims. As set forth herein, the Court does not find one that survives summary judgment.

To establish a viable Title VII discrimination claim under the burden shifting regime articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), the plaintiff must first demonstrate a prima facie case of discrimination. *Abarca v. Metro. Transit Auth.,* 404 F.3d 938, 941 (5th Cir. 2005); *Okoye v. Univ. of Tex. Houston Health Science Ctr.,* 245 F.3d 507, 512 (5th Cir. 2001). Once established, the prima facie case raises a presumption of discrimination, which the defendant must then rebut by demonstrating a legitimate, nondiscriminatory reason for its actions. *Okoye,* 245 F.3d at 512. If the defendant satisfies this burden, the presumption disappears, and the plaintiff must show that the defendant's reason is a pretext for discrimination. *Id.* The ultimate burden of persuasion that a defendant intentionally

---

deposition testimony explains, without contradiction, that JFCI faculty sometimes received additional pay when they taught "extra" courses, but more often, did not. *See* Kaslow Dep. Tr., Rec. Doc. 188-1, at p. 115. Further, he explained that he received the additional pay for the "overload" only when he taught three or more extra classes and "started saying, 'I can't do this anymore, it's killing me.'" *Id.* Plaintiff has not shown that she made such a request, under comparable circumstances, that was denied.

discriminated, however, remains at all times with the plaintiff. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002).

With regard to pretext, the "mixed-motives" approach applies when a plaintiff contends that discrimination was a motivating factor, if not the sole motivating factor, for the defendant's actions.  Under those circumstances, a plaintiff seeking to rebut an employer's legitimate, nondiscriminatory reason for an employment action must "offer sufficient evidence to create a genuine issue of material fact (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative);  or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)."  *See Rachid v. Jack in the Box, Inc.*, 376 F. 3d 305, 310-313 (5th Cir. 2004) (internal citations omitted);  *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148 (2003).

Finally, if a prima facie case is established, and the plaintiff presents sufficient evidence to create a triable issue as to the falsity of the employer's explanation, a trier of fact, absent unusual circumstances, may infer the ultimate fact of discrimination from the falsity of the employer's explanation.  *Blow v. City of San Antonio*, 236 F.3d 293, 298  & n.3 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48 (2000));  *see also Ratliff v. City of Gainsville, Texas,* 256 F.3d 355, 359-62 (5th Cir. 2001).  A plaintiff's subjective belief that discrimination occurred, however, taken alone, is insufficient to create an inference of pretext. *See, e.g., Goring v. Board of Supervisors of Louisiana State Univ. & A&M College*, 2011 WL 409077, *1 (5th Cir. 2011)(citing *Lawrence v. Univ. of Tex. Med.*, 163 F.3d 309, 313 (5th Cir.1999)); *Price*

*v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir.1997). Rather, a plaintiff must provide sufficient evidence from which a reasonable inference can be drawn that a defendant's proffered reason is false; a mere shadow of doubt is insufficient. *See, e.g., Ryburn v. Potter*, 155 Fed. Appx. 102, 107 n. 6, 2005 WL 2476338, *3 n. 6 (5th Cir. 2005); *Auguster v. Vermilion Parish Sch. Bd.,* 249 F.3d 400, 403 n. 3 (5th Cir. 2001).

Under Title VII, establishing a prima facie case of discrimination relative to an adverse employment action requires a showing that: (1) the plaintiff is a member of a protected group; (2) she was qualified for the position at issue; (3) she was discharged or suffered some adverse employment action by the employer; and (4) she was replaced by someone outside her protected group, or was treated less favorably than other similarly situated employees outside her protected group. *Mitchell v. Snow,* 326 Fed. Appx. 852, 854, 2009 WL 1687798 (5th Cir. 2009) (citing *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir.2007) (per curiam)). With Title VII discrimination claims, as opposed to Title VII retaliation claims, "'adverse employment actions' include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Id.* (internal quotations omitted).

To demonstrate that "similarly situated" persons outside of Plaintiff's protected class "were treated more favorably" than she, Plaintiff must show that such persons received preferential treatment under "nearly identical circumstances." *Okoye*, 245 F.3d at 514-15; *see also Earle v. Aramark Corp.*, 247 Fed. Appx. 519, 523, 2007 WL 2683821, *2 (5th Cir. 2007). Such circumstances include the employees' misconduct and violation histories. *Brooks v. Lubbock Cty. Hosp. Dist.*, 373 Fed. Appx. 434, 436-37, 2010 WL 1439109, *2-3 (5th Cir.), *cert. denied*, 131 S.

13

Ct. 228 (2010); *Perez v. Texas Bd. of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004); *see also*

*Smith v. Wal-Mart Stores*, 891 F.2d 1177 (5th Cir. 1990)(circumstances not identical when other

employee did not breach same policy as plaintiff). Finally, when the alleged adverse employment

action is the denial of a promotion, a prima case of discrimination is made when a plaintiff shows

that: (1) she was a member of a protected group; (2) she applied for a position; (3) she was qualified

for the position when she applied; (4) she was not selected for the position; and (5) the position

thereafter remained open or was filled by a person outside the protected group. *See, e.g., Browning,*

288 Fed. Appx. at 175, 2008 WL 3009894 at *3; *Blow,* 236 F.3d at 296).

       In the instant action, Plaintiff's assertions of discrimination purportedly are based

on her gender, and her being Catholic and Cajun. On the showing made, however, the Court finds

no evidentiary basis exists for a reasonable juror to conclude that Plaintiff suffered a viable "adverse

employment action," for purposes of Title VII, because she is Catholic or Cajun.[10] Focusing then

on her gender-based claims, Plaintiff appears to contend that: (1) she was paid less than Kaslow and

Cheramie, who are male, because she is female; (2) she was not given a twelve-month appointment

because she is female; (3) she was not considered for the higher-paid Associate Dean position given

to Cheramie because she is female; and (4) because she is female, she lost her Assistant Dean

position, and was denied renewal of her assistant professor appointment, and tenure review, when

she reported, and refused to participate in, wrongdoing by other JFCI employees, whereas male

employees who made similar complaints, or even committed wrongdoing, suffered no adverse

---

[10] Although the Court also considers Plaintiff's assertions that her status as a Catholic and/or a Cajun served as the basis for a Title VII hostile work environment, the Court, as is indicated below, likewise finds Plaintiff's evidentiary support for those claims to be legally deficient.

consequences.

The Court finds that Plaintiff has not satisfied her summary judgment burden relative to establishing a prima facie case as to any of these claims. Specifically, for essentially the same reasons stated with respect to Plaintiff's EPA claim, any assertions of gender discrimination by Plaintiff relative to her pay rate fail because she does not show that Kaslow or Cheramie was "similarly situated." The same is true relative to Plaintiff's assertions that she, unlike male employees, suffered adverse employment actions when she reported and objected to what she perceived to be wrongdoing by fellow JFCI employees. That is, she has not established a triable issue as to whether male employees received preferential treatment under "nearly identical circumstances." Finally, as the Court discussed in connection with Plaintiff's EPA claim, there is no indication that Plaintiff sought, but was denied, a twelve-month appointment and/or the Associate Dean position, from pertinent decision-makers.[11]

Even assuming that Plaintiff has satisfied her summary judgment burden in terms of establishing a prima facie case of discrimination, the Court additionally finds that no triable issue exists as to pretext. As discussed in connection with Plaintiff's EPA claim, the summary judgment record reveals legitimate, non-discriminatory reasons for the pay level and contract term disparities, and Cheramie's appointment as Associate Dean. In terms of the elimination of Plaintiff's Assistant Deanship, and the non-renewal of her Assistant Professor tenure-track appointment, the same is likewise true. Stated summarily, Doody purportedly thought that Plaintiff, who was about to be

---

[11]     The Court notes that, at the time of Plaintiff's first appointment as Assistant Dean, JFCI did not have an Associate Dean position.

15

eligible for tenure consideration, was resistant to his authority and  leadership, was not accepting of or receptive to the change in direction that he, the administration, and other faculty members foresaw for JFCI, was not satisfactorily communicative, and had poor relations with other faculty members.[12]

It is possible that a reasonable juror, considering all of the evidence and making credibility determinations, might conclude, as Plaintiff also has argued, that Doody acted to eliminate her Assistant Deanship, terminate her employment, and deprive her of tenure consideration, not for the reasons stated, but because she, in good faith, objected to and "blew the whistle" on actions taken by him that she believe violated applicable law and/or university policies. That being said, the summary judgment evidence does not establish a legally sufficient basis for the trier-of-fact to conclude that Doody's explanation actually was a pretext for gender discrimination. Or, stated differently, on the showing made, there is no reasonable basis for a juror to determine that Plaintiff's gender actually motivated those decisions.

### B.   Hostile Work Environment (Harassment)

A plaintiff can establish that she was harassed in violation of Title VII by proving that the harassment created a "hostile or abusive working environment." *Harvill v.   Westward Communications, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005).  To establish such a claim, a plaintiff must demonstrate that: (1) she is member of a protected group; (2) she was the victim of unwelcome

---

[12]     *See, e.g.,* Doody Dep. Tr., Rec. Doc. 245-6, at pp.118-128, 137-43,150-52,183, 226, 228- 249, and 250-63; *see also* Rec.  Doc. 332-3, pp. 1-5 of 11.  Thereafter, Hulbert and the other administrators accepted Doody's assessment.  Following the grievance hearing, the Board of Supervisors approved non-renewal of Plaintiff's employment contract.

harassment; (3) the harassment was based on her protected status; (4) the harassment affected a "term, condition, or privilege" of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.  *Id.*

To be actionable under Title VII, the harassment must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)(internal quotations omitted).  In determining whether an environment is "hostile" or "abusive" within the meaning of Title VII, courts look at the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift,* 510 U.S. 17, 23(1993)(internal quotations omitted)).  Furthermore, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."*Id.* (quoting *Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871, 874 (5th Cir. 1999)(internal quotations omitted)).

Plaintiff's assertion of a gender-based hostile work environment appears to be premised on allegations that Doody told her to "get him a cup of coffee" and to "take care of girl stuff," and held faculty meetings at a time when she often had a scheduling conflict.[13]  She also objects that he requested that she meet with him over dinner, as he had with other faculty members. Relative to other faculty members, she complains of their use of language that she considered vulgar

---

[13]        *See* Amended Charge of Discrimination, Rec. Doc. 287-4, at p.2.

17

and profane, and certain comments and language that purportedly made some female students uncomfortable.  Additionally, she contends that faculty meetings "were usually adjourned to drinking establishments" where discussions of department matters continued over "cocktails."[14] She also references inappropriate advances made by former Dean DiMicelli, and Cheramie calling her "Betty Crocker."[15]  Finally, she complains that during her last year of employment, after she had received notice of non-renewal, she had an unfairly heavy teaching load, was assigned to distant classrooms, and was excluded from certain school events and from weighing in on some matters about which all faculty members traditionally had been consulted.

Regarding Plaintiff's assertions concerning her status as a Catholic and a Cajun, she complains that Doody often made referred to Cajuns as "hicks", and made statements suggesting that Cajuns are dumb, or at least "not brain surgeons."[16]  Finally, in terms of alleged religion-based harassment, she contends that Doody  made references to "Cafeteria Catholics," and commented that, because the Houma/Thibodaux area is predominantly Catholic, JFCI faculty members had "to be careful how we go about [the Bayou Country Club project], [so] that the Catholics wouldn't perceive us as making money at the expense of the other local, small restaurants."[17]   Plaintiff contends that,  in making such a comment, she felt that Doody was seeking to have her participate

---

[14]      *See* Superseding Complaint, Rec. Doc.167, at ¶80.

[15]      *Id.* at ¶114.

[16]      Because it is not necessary that the Court decide whether Cajuns are a protected group for Title VII purposes, the Court does not do so.

[17]      *See* Parr Dep. Tr., Rec. Doc. 287-1, at pp. 56-60.

in something that would be objectionable to her Catholic beliefs.[18]

Even considering all of these allegations as a whole, Plaintiff fails to satisfy her summary judgment burden of establishing harassing conduct – on the basis of gender, religion, or being Cajun – that is severe or pervasive enough to alter the conditions of her employment and create a working environment that a reasonable person would find objectively hostile and abusive. Additionally, Plaintiff's submissions reveal that much of language and comments about which she complains ended after she requested that the speaker forego making such remarks. In other instances, there is no indication that she informed the perpetrator that she found his conduct or language offensive and requested that it cease, or reported the conduct to university officials. With respect to DiMicelli's conduct, university administrators did take remedial action, and his employment with JFCI shortly ended. Finally, in addition to being insufficiently severe or pervasive, it is not evident that objectionable matters occurring during Plaintiff's last year of employment actually were based, even in part, on her gender, religion, or Cajun ancestry. Accordingly, the Court finds Plaintiff's Title VII hostile work environment claims lack merit.

## IV.    <u>Title IX</u>

To the extent that Plaintiff seeks to recover damages from Defendants under Title IX for gender-based *employment* discrimination – either directly under Title IX or derivatively under §1983 – such claims are precluded by the remedies provided by Title VII. *See Lowery v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997); *Lakoski v. James,* 66 F.3d 751, 758 (5th Cir. 1995); *Prewitt v. Mississippi State Univ.*, 2009 WL 57087, *3 (N.D. Miss. Jan. 7, 2009).

---

[18]    *Id.* at pp. 58-60.

Additionally, Plaintiff's submissions arguably suggest that non-renewal of her employment at JFCI deprived female students of a female role model and, thus, violated Title IX.[19]  If that is Plaintiff's contention, her demonstration of the viability of such a claim under Title IX, and/or that she has standing to assert it, is fatally deficient at this juncture.

## V.    Claims Under 28 U.S.C. §1983 Against Individual Defendants

Victims harmed by discriminatory conduct violative of the Equal Protection Clause of the United States Constitution can seek monetary damages under 28 U.S.C. §1983 from the state personnel who caused the harm.  *See, e.g., Southard v. Texas Bd. Of Crim. Justice*, 114 F.3d 539, 548-49 (5th Cir. 1997).  To the extent that Plaintiff has sought such relief in this lawsuit relative to the individual defendants, those claims, which the Court understands to essentially mirror the claims asserted against the Board of Supervisors, her employer, fail for the same reasons as Plaintiff's unsuccessful Equal Pay Act and Title VII claims.

---

[19]        *See, e.g.,* Superseding Complaint at ¶¶ 70 & 73.

## CONCLUSION

For the foregoing reasons, as stated herein, the Court finds that Plaintiff has failed to meet her summary judgment burden relative to the claims of disparate treatment and hostile work environment that she attempts to assert under the Equal Pay Act, Title VII, Title IX, and/or 28 U.S.C. §1983.   Accordingly, **IT IS ORDERED** that these claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 3rd day of March 2011.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**